### BLAKE *v.* ANDREWS *et al.*

(*Supreme Court, General Term, First Department.*   March 28, 1890.)

ATTORNEY AND CLIENT—SERVICES—ACTION.

   Defendant's intestate wrote plaintiff, an old friend, residing in Canada, saying: "It is a very long time since you sent me word you intended coming to see me, but you did not come. \* \* \* Is there any chance of your coming this way? I should like to see you. I have much to say to you, and want you to do something for me I do not care to mention here." In consequence of this letter, plaintiff, as he asserted, came to New York, and remained there until December, almost daily visiting decedent, who was confined to his house, and rendering the alleged services, which consisted chiefly of making inquiries as to the value of stocks, and doing some writing, the nature of which did not appear. The value of the services was not shown by any distinct evidence; and although deceased did not die until March, 1888, and decedent never saw him after December, 1886, no bill was presented. *Held*, that a finding adverse to plaintiff's claim would not be disturbed.

Appeal from a judgment entered upon referee's report, disallowing a claim against the estate of Thomas White, deceased, for professional services rendered decedent by plaintiff, John N. Blake, as his attorney, between September, 1886, and December 9, 1886.   The following is the opinion of referee:

"John N. Blake, the claimant, is a barrister and attorney residing and practicing his profession at Toronto, Canada.   He was acquainted with the decedent for many years prior to the death of the latter, and had attended to business for him as counsel.   On September 12, 1886, the deceased wrote from New York to the claimant at Toronto, requesting him to assist the writer in endeavoring to ascertain the whereabouts of a niece whom he supposed to be in New Orleans or vicinity.   This letter also contained the following: 'Is there any chance of your coming this way? I should like to see you. I have much to say to you, and want you to do something for me I don't care to mention here.'   According to the postmarks, this letter was mailed in New York September 14, 1886, was received in Toronto the next day, and was delivered to the claimant in due course.   On receipt of this letter, Mr. Blake made inquiries of friends of his, in Toronto, who had been in New Orleans, as to their correspondents there, with a view of getting some information with reference to Mr. White's niece.   One of these gentlemen referred him to a Mr. O'Donnell, to whom he wrote, and from whom he received an answer, which is an exhibit in the case.   He wrote to the mayor of New Orleans, and advertised in the newspapers in that city; expending $4.25 for that purpose.   In response to the advertisement, two answers were received. This particular employment does not appear to have proceeded any further. Near the close of September, 1886, the claimant went from Toronto to New York.   There he met Mr. White on September 30, 1886.   He remained in New York until December 9, 1886, when he returned to Toronto, and never saw the deceased again.   No demand was ever made by the claimant upon, nor bill presented to, Mr. White for the services and disbursements now claimed.   Mr. White died March 20, 1888.   In September, 1888, the claimant lodged with the administrators a claim containing these items:

To services from Sept. 16th, 1886, to Sept. 30th................................. $    15 15
Services in New York, Sept. 30th to Dec. 11th, 1886, 72 days, at $20........... 1,441 00
Expenses, same period, at $3 per day......................................... 216 00
Cash pd. advertisement Eliza White.........................................    4 25
Traveling expenses going and returning to Canada...........................   33 00
                                                                            ──────────
                                                                            $1,709 40
    Cr.   By cash on account..................................................  $65 00

"This claim was rejected by the administrators, and was thereupon referred to me, as sole referee under the statute. The claimant endeavored to show that the services rendered, both here and in Toronto, were of greater value than is set forth in the foregoing particulars of the claim; but, as the order of reference directs me to ascertain whether a claim for $1,644.40 against the estate is valid, I cannot consider a claim for any greater amount. Taking the claim as presented, the $65 credited on account more than pays for the services at Toronto, and the disbursement of $4.25 in the Eliza White matter. The only question, therefore, for my decision is as to the claim for $1,441.00 for services rendered in New York, and $248 disbursements incidental thereto.

"The extract from the letter already given did not constitute an employment of the claimant concerning the matters proved to have been performed in New York; nor is it attempted to be shown that the claimant came to New York because of the receipt of that letter, or of any suggestion emanating from the deceased. It remains, then, to be considered whether the alleged services were rendered under such circumstances as would reasonably lead the deceased to understand that he must pay for them, and the claimant to expect to receive such payment. This requires an examination of the evidence. It was proved on behalf of the claimant, by members of the family with whom the deceased boarded, that at the time spoken of the deceased was an invalid, practically confined to his room, which was at 306 West 53d street, and that Mr. Blake called to see him almost every day, and that when he came his stay was protracted; that frequently he would call more than once a day; and that he came at all hours of the day and evening. Mr. Blake's statement is that he does not recall a single day when he did not visit the deceased, as a rule, and that he used to come down town every day, and afterwards go up and see Mr. White. It was proved by members of the family heretofore referred to, that Mr. White had said that Mr. Blake was his lawyer, had done business for him, and that on some occasions he was seen writing in Mr. White's room. The claimant further testified that, when he was not with the decedent, he was at times engaged for the decedent of making inquiries concerning certain stocks and a railroad bond the deceased was interested in. The stocks he investigated were Pacific Mail, Ohio & Mississippi, Western Union, Ontario & Western, and Central Pacific, and the bond one of those of the West Shore road. This investigation consisted of making inquiries as to present value and probable value. He also went to a good many places to inquire about rooms which would accommodate Mr. White and himself. On cross-examination, the claimant stated that from 1880 to 1886 he was not engaged in the practice of his profession, and that in January, 1886, he renewed that practice at Toronto.

"That Mr. Blake spent a great deal of time with the deceased seems beyond question; but the amount of that time spent by the claimant in rendering services is not shown with any precision, and the results of such service are not shown at all. Some testimony is given that sometimes he wrote for the deceased; but whether that writing was such as needed a barrister to perform it, or was merely clerical, does not appear. Neither does it appear how much time was spent in writing. If, on half a dozen occasions, the claimant had done mere copying for the deceased, all the conditions of the evidence on

the question of writing would be fully met. The other services proved consisted of the investigation of the prices of shares in the stock of several railroad corporations, and once of a corporation bond; which might, for anything that appears to the contrary, have been performed by almost any person who had reached the years of discretion. The investigation as to the West Shore bond, which may be assumed to be typical, for it was the only one into which the claimant went, proves this to be so. It was a service which a boy could have rendered, and, indeed, was rendered by one; for Miss Susan Yeoman says Mr. White once asked her brother to go to the office, and make substantially the same inquiry about the same bond. All the evidence on this head is vague; and, as was said of the services in writing, half a dozen such services, taking but little time for each, and of a trivial character, would meet all the requirements of the evidence on this point.

"If, then, I find the claimant entitled to compensation at a rate which would be a reasonable remuneration for a barrister for the period specified, which includes ten Sundays, it must be on the theory that the deceased had called the claimant here to perform some particular service such as was vaguely suggested by the letter, and had then kept him dancing attendance during the period covered by the claim. That this was in part, at least, the theory of claimant's counsel is shown in that the questions as to the value of services cover not only days when services were performed, but also those when the claimant was ready to perform them. But the difficulty is that there was no proof of a retainer. The letter did not constitute one, as has been said before; and, for aught that appears to the contrary, the claimant came here of his own motion. There is no proof of a retainer after the claimant got here, and not the slightest proof that he was kept here waiting for something which it was expected would be done; and, as the relation seems to have originated in the volition of the claimant, it also seems to have terminated in the same way; for, by the claimant's own evidence, it appears that Mr. White said, after the former's departure, that he had gone to Canada to attend to some election in which he was interested. On the other hand, it was proved, on behalf of the administrators, by Clarke White, that Mr. Blake was in New York city from June 1 to August 9, the same year, and that when he left here on the latter day he said he had to come back in a few weeks. If this be true, and the claimant does not deny it, the visit commencing September 30, 1886, which was but little over a month later, was not because of the employment by the deceased, but because of other engagements of which he spoke to Mr. Clarke White, which engagement may have very well been what one of the administrators swears the claimant told him, viz., that having been out of practice for some time prior to January 1, 1886, and that having little to do, he came to New York, contemplating the possibility of settling here. I am strengthened in my belief that this is the true theory by the testimony of the claimant where he says he used to come down town every day, and afterwards go up and see Mr. White, (the deceased,) from which it may be fairly implied that he had affairs of his own to attend to.

"I hold that the claimant is not entitled to recover any portion of his claim; that the services performed were few and trivial, and such as the deceased would not have any reason to expect he would be called upon to pay for, especially at the compensation ordinarily paid to a barrister; and that there can be no recovery for the time the claimant was here ready and willing to perform services, because there is no express or implied contract that he should be paid for so doing. I am strengthened in my belief of the justice of this conclusion in that although the alleged services terminated in December, 1886, and Mr. White did not die until March, 1888, this claim was never presented to him."

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*E. R. Johnes,* for appellant. *Thomas J. Purdy,* for respondents.

BRADY, J.   This proceeding was the result of a claim for professional services rendered to the deceased by the appellant as a lawyer between the 16th of September, 1886, and the 9th of December, in that year.   The appellant is a barrister and attorney in active practice in the city of Toronto, Canada.   Previous to 1880 he seems to have acted as counsel for the decedent.   He retired from active practice from 1880 to 1886, resuming in January of the latter year.   The decedent was at that time a resident of New York, and in a very precarious state of health, which continued, and from which he never recovered.   In September, 1886, the decedent addressed him a letter, in consequence of which, it is asserted, he came to New York, saw the decedent, and remained in New York from September until December, visiting the decedent, who was confined to his house, almost daily.   The letter began: "It is a very long time since you sent me word you intended coming to see me, but you did not come;" and further on: "Is there any chance of your coming this way?   I should like to see you.   I have much to say to you, and want you to do something for me I do not care to mention here.   I feel I shall never be able to leave New York."   The services rendered were what may be designated as "semi-professional," consisting, chiefly, of making inquiries as to the value of certain stocks and bonds, and doing some writing; but what the writing related to does not appear.   The referee selected for the necessary investigation, in a very careful opinion disposes of the claim adversely to the appellant; and it may be that it is not necessary to do more than refer to that opinion, in consequence of its elaborate and thorough presentation of the controversy.   But, nevertheless, some observations in addition will be made.

The services, as already mentioned, were semi-professional, and are such as could have been rendered by a person other than a barrister, for the reason that the value of stocks and bonds is generally determined by the quotations appearing in the daily newspapers.   The value of such services is not shown by evidence distinctly relating thereto.   The value of professional services, *eo nomine,* appears to have been given before the referee; but they are not conclusive, and perhaps of no service in this case, for the reason that they relate entirely to professional services, and not to those semi-professional services rendered in this case.   If a lawyer gives his whole time, absenting himself from his place of abode, to matters not professional, he should establish by competent evidence the value of such services.   Here, from the character of the letter, and the character of the relations existing between the decedent and the appellant, there would appear to have been a mere companionship existing between them, resting more upon old friendship than otherwise; and this view seems to be sustained by the fact that although the death of the decedent occurred on the 20th of March, 1888, the appellant, by his own statement, never saw the decedent after December, 1886, and never presented to him a bill for the alleged services.   For these reasons, and those stated in the opinion of the referee, the order should be affirmed, with $10 costs and disbursements.

VAN BRUNT, J., concurs.

DANIELS, J.   Whether anything should be allowed the claimant was wholly a question of fact, to be determined by the referee.   The evidence was in no sense conclusive either way; and it was for him to decide which view of it should be adopted.   He has considered that the most probable which is adverse to the claimant; and the law requires his action to be sustained in the disposition of the appeal.   The judgment, therefore, should be affirmed.